# W. J. HAMMOND & SONS (LIMITED)

## v.

## THE CRAGIN MANUFACTURING COMPANY.

*Sales—Damaged Iron—Correspondence—Uncertainty as to Meaning of —Evidence—Instructions.*

1. Upon a contention involving the meaning of certain correspondence relating to the sale of a lot of damaged iron, this court holds that the instructions given in behalf of plaintiff touching the intention of the parties in interest were less favorable than they were entitled to, and that proper instructions as to damages were not given.

2.  The meaning of correspondence is a question for the court, unless it appears that the words used are to be considered in other than the ordinary sense.

[Opinion filed May 29, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. ARBA N. WATERMAN, Judge, presiding

Mr. L. S. HODGES, for appellant.

Mr. W. A. MONTGOMERY, for appellee.

GARY, J.    In July, 1887, as this record shows, the appellants, at Pittsburgh, Pa., had on hand a quantity of sheet iron and steel that had been damaged by a fire that consumed their mill.

The manager of the appellees negotiated with them to buy it.  It was not in good shape to be examined, being among the ruins of the mill, except a small part that had been removed to a shed, but he examined it as carefully as he could. He asked the appellants if they had any memoranda, and they said they had a memorandum on which they computed their insurance.  They could not give him a copy, but permitted him to have a copy made at his own expense, and a representative of the appellants assisted him in comparing the copy with the original.  He testified that he then made to the appellants an offer of one and one-fourth cents per pound, delivered in Chicago, for the entire lot of iron, as per that memorandum; and told them he would hold the offer open forty-eight hours.  There was a reservation of some iron, but no notice of that need now be taken.  It does not affect the questions to be decided.  Then followed this correspondence :
Copy of telegram :

PITTSBURGH, PA., July 29, 1887.
To W. P. CRAGIN :
Care Cragin Mfg. Co., Chicago, Ill.
We accept your offer for the sheet iron and sheet steel we named you.  Will commence shipping immediately by B. & O. road.  Send formal order.
W. J. HAMMOND & SONS (Limited).

Copy of letter:

PITTSBURGH, July 29, 1887.

W. P. CRAGIN, Esq.:

Acc't Cragin Mfg. Co., Chicago, Ill.

*Dear Sir:*—We have just telegraphed to you the following: viz.: "We accept your offer for the sheet iron and sheet steel we named you. Will commence shipping immediately by B. & O. road. Send formal order." Which we now con_firm. Please remit for the goods as rapidly as we ship them.

Yours truly,

W. J. HAMMOND & SONS (Limited).

By S. M. REYNOLDS.

In answer to which appellees wrote:

CHICAGO, July 30, 1887.

HAMMOND & SONS:

PITTSBURGH, PA.

*Gents:*—Ship us to Chicago all the sheet iron and steel that is bundled, as per your mem. given our W. P. Cragin. Price (1¼) one and one-quarter cents, delivered in Chicago. Terms 10,000 cash, balance notes. Our bank says we can probably have about all cash if it does not go over $15,000. We are not to have any of the iron that had not been annealed, or bundled. We may telegraph you to ship it to our factory, but we can alter that of first cars after we get the bills of lading here. We have not got storage fully arranged yet. If it can be arranged send a gauge in a car, but be sure and promptly send exact mem. of contents of each car. We have received your telegram accepting this offer.

Yours truly,

CRAGIN MFG. CO.

W. P. CRAGIN, Pres't.

The appellees claimed that as the appellants accepted and shipped upon this letter; the terms of it constituted the contract between them; that under that contract the appellees were entitled to all that the memorandum said was bundled and that the quantity shipped fell short 251,258 pounds; that it was worth in Chicago two and seven-tenths cents per pound and they had lost thereby $3,434.75.

On the part of the appellants it was claimed that under the letter from the appellees, the appellees were not bound to accept, and could not claim any that had not been "bundled" in fact, however it might be represented upon the memorandum, and gave evidence that they sent all of that, except a trifling quantity shipped by mistake to another party, about which it is fair to suppose there would never have been any trouble between these parties.

The briefs on both sides agree that "bundled" means several sheets put together with two or three iron bands around the whole; that, in fact, it is what Webster defines a bundle to be—a number of things bound together. The sentence in the letter, "We are not to have any of the iron that had not been annealed or bundled," must have had some meaning when it was written, which the writer supposed the receiver would understand. It was written with reference to what had passed through a fire, presumably destroying the apparatus by which annealing was done. "That had not been annealed or bundled," when? Before some event, manifestly, which the appellants would understand that phrase to refer to. By it the appellees excepted from the general words of the first two lines of their letter, all that the memorandum showed to be "bundled," which, in fact, had not been so treated. And appellees' letter did not refer to any verbal preceding negotiations. Its concluding words are, "We have received your telegram accepting this offer"—not any former offer. The case was tried in the Circuit Court upon the theory that the appellants were bound—considering the correspondence as containing the contract, as was no doubt correct —to deliver to the appellees all that was "bundled as per your mem.," disregarding the exception in the subsequent sentence. The appellants sued for the unpaid balance for what had been shipped, $4,442.01, which the appellees admitted to be correct.

The appellants asked these instructions:

1. The jury are instructed that the word "bundled," as used in the defendant's letter of July 30, 1887, must be held to have been so used in its plain, natural and obvious meaning, unless the jury shall find from the entire evidence in this case

that the plaintiff and defendant both intended to use it in a limited, or technical and special sense.

2. The jury are instructed that the letters and telegrams set out in the defendant's bill of particulars did not require the plaintiff to deliver to the defendant any iron which had not then been actually bound in bundles, unless the jury shall find from all the evidence in this case that the word "bundled," as used in said letter of July 30th, was intended by both plaintiff and defendant to be so used in a limited and technical sense. Therefore, if the jury find from the evidence that the plaintiff did deliver to defendant, as agreed, all the iron which had been so bound in bundles, then in the absence of proof that the word "bundled" was intended by plaintiff and defendant to be used in a limited and technical sense, the defendant can not recover in this action.

3. The court instructs the jury that if they find from the evidence that the plaintiff agreed to deliver to the defendant certain iron which was "bundled," they must interpret the word "bundled" in its plain, natural and ordinary sense, unless they find from all the evidence in the case that it was intended by both plaintiff and defendant that the word "bundled," so used, should bear a different and special or technical meaning; therefore, if they find from the evidence that plaintiff did deliver, as agreed, all the iron that was "bundled," in the ordinary meaning of the word, in the absence of proof that it was mutually intended to use the word in a limited or technical sense, the defendant can not recover.

There was no evidence upon which to leave to the jury that "bundled" iron meant anything else than iron in bundles, nor any dispute that the mode of putting it in bundles was to put together several sheets and put two or three iron bands around them.

The instructions were less favorable than the appellants were entitled to. The meaning of the correspondence was a question for the court, unless there had been evidence of words being used in a sense differing from the common one. The jury should have been told that the appellees were not entitled to any damages for the non-delivery of any iron that

had not been in fact bundled before the letter of July 30th was written. The appellees were allowed upon their theory all the damages they claimed, and the appellants only recovered the difference.

From that judgment they appealed. The judgment must be reversed and the cause remanded.

*Reversed and remanded.*